[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1364 
This case involves a child support arrearage and the denial of post-minority support for college expenses.
Prior to becoming 19 years of age, Danielle Newman (daughter), by her next friend, James W. Allen (stepfather), filed a complaint on December 11, 1992, against her father, Danny J. Newman, seeking a child support arrearage and interest pursuant to her parents' divorce judgment, and also seeking post-minority support for her college expenses. She alleged that her parents were divorced, and that her mother, Cherie D. Allen, was deceased. She further claimed that her stepfather has had physical custody of her since her mother's death. The father filed a motion to dismiss on the grounds that the stepfather had not been appointed as the daughter's guardian or custodian, and that therefore, he had no standing to bring the action. The father asserted that he had attempted to comply with the child support provisions ordered in the divorce judgment, but that his checks were returned and he was advised by the court that "there was no one to pay it to since his former wife had died." The daughter became 19 years old prior to any ruling.
The trial court granted the father's motion to dismiss as to the stepfather, but allowed an amendment to substitute the daughter as the plaintiff since she had then reached the age of majority.
The trial court denied the daughter's request for a continuance for the purpose of obtaining more information for her case. Following a hearing, the trial court found that the father owed an arrearage for past due child support, entered a judgment for that amount for the daughter, and denied the daughter's request for post-minority support for educational expenses. After the daughter filed a post-judgment motion, the trial court amended the order to include interest on a recomputed arrearage. The father's post-judgment motion was denied, and he appeals. The daughter cross appeals.
The father's issue concerns whether the child support provisions of the divorce judgment *Page 1365 
can be enforced by the daughter against him, as custodial parent, after the death of the mother. The mother had been awarded custody and child support pursuant to the divorce judgment. Following her mother's death, the daughter, against the father's wishes, chose to live with her stepfather, who has no legal obligation or authority regarding the daughter's support and maintenance.
On cross appeal, the daughter raises numerous issues, stated dispositively as follows: (1) whether the trial court erred in dismissing the case brought by the stepfather as next friend of the daughter; (2) whether the trial court erred in denying her continuance to obtain additional evidence to support her petition for post-minority educational support; and (3) whether the trial court erred in denying post-minority educational support.
The father contends that at the death of the mother, he automatically became his daughter's legal custodian, and that neither the stepfather, nor the daughter, could enforce the provisions of the divorce judgment regarding child support. He does not argue that his legal obligation to support his daughter ended, and, in fact, he provides evidence of his willingness to support his child. He couches his argument in terms of whether the surviving divorced parent can be required to pay child support, which was ordered by the divorce judgment, directly to the child or to someone she chooses to live with against the surviving parent's wishes. Additionally, because of this peculiar fact situation, we are faced with considering whether a child of divorce may sue her surviving custodial parent for post-minority support for her college expenses.
This case presents multiple questions of first impression in Alabama. Cases involving children and families, including cases involving post-minority support, must be considered on a case-by-case basis. Butts v. Butts, 600 So.2d 1038
(Ala.Civ.App. 1992). Therefore, the unusual facts in this case strictly narrow the holding in this case to the fact situation. We are not to be misunderstood as indicating that this exact result would occur in other similar but not identical situations.
Our research has revealed no Alabama cases determining whether the legal custody of a child of divorced parents automatically reverts to the noncustodial parent upon the death of the custodial parent. The law of some other jurisdictions is that upon the death of the custodial parent, the "right to custody immediately and automatically inures, or accrues, or reverts, to the surviving parent." W.W. Allen, Annotation,Right to Custody of Child as Affected by Death of CustodianAppointed by Divorce Decree, 39 A.L.R.2d 258, 260 (1955). SeeBrown v. Brown, 218 Ark. 624, 238 S.W.2d 482 (1951); Webb v.Webb, 546 So.2d 1062 (Fla.Dist.Ct.App. 1989), review denied,553 So.2d 1168 (Fla. 1989); Whiteside v. Dickerson, 240 Ga. 54,239 S.E.2d 377 (1977); Judd v. Van Horn, 195 Va. 988,81 S.E.2d 432 (1954).
Numerous principles regarding custody emerge as guidance for this decision. In Alabama, there exists a presumption that "a natural parent has a prima facie right to the custody of his or her child." Ex parte McLendon, 455 So.2d 863, 865 (Ala. 1984). That prima facie right to custody recognizes the presumption that, as a matter of law, the best interests and welfare of the child are served by maintaining parental custody. The presumption, however, does not apply after a voluntary forfeiture of custody or a prior judgment removing custody from the natural parent and awarding it to a nonparent. Michael v.Swords, 568 So.2d 836 (Ala.Civ.App. 1990). See also McLendon,supra. In a custody dispute between a stepfather and a father after the mother's death, our Supreme Court has stated that the father's prima facie right to custody of his child may be overcome by clear and convincing evidence that the father is unfit or unsuitable for custody of his child. Ex parteBerryhill, 410 So.2d 416 (Ala. 1982). In the case sub judice, no evidence indicates that the father is unfit, nothing indicates that he voluntarily forfeited his prima facie right to custody of his daughter, and no prior judgment awarded custody to a nonparent. Furthermore, custody is not disputed and was never challenged. The original divorce judgment contained no finding that the father was unfit; it simply *Page 1366 
awarded custody to the mother, who is now deceased. There is no indication that the stepfather ever sought custody or sought support for the daughter from her father following the mother's death. Although the father requested that the daughter live with him following her mother's death, the daughter chose to live with her stepfather. The stepfather, although not legally obligated, voluntarily supported the child. It appears that, at most, the stepfather merely allowed the child to reside with him after her mother's death and chose to serve in the role of an unobligated volunteer. See Deal v. Deal, 545 So.2d 780
(Ala.Civ.App. 1989).
Although the record is devoid of information regarding the relationship of the father and the daughter before the mother's death, the evidence is undisputed that the father sought to establish a relationship with her after the mother's death. He attempted unsuccessfully to enlist the support and assistance of the maternal grandparents in building a relationship with his daughter. Against her father's wishes, the daughter chose to live with the stepfather and chose to have little contact with her father and her half-brother by her father's remarriage. The stepfather voluntarily supported the daughter and sought no assistance from the father until he began this action to seek an arrearage for what he claimed was past-due child support pursuant to the divorce judgment. Although there was some testimony that the stepfather intended to seek guardianship of the daughter, it is undisputed that the stepfather never sought legal guardianship or custody of the daughter. He chose to continue as a legally unobligated volunteer. Although the State may have exercised its power of parens patriae to enforce the divorce judgment for the benefit of the daughter during her minority, there was no evidence that it did so. See generally R.J.D. v. Vaughan Clinic, P.C.,572 So.2d 1225 (Ala. 1990) (Adams, J., dissenting). Our research has revealed no authority in Alabama to allow a stepfather, a stranger to the divorce, to enforce the divorce judgment. Furthermore, the stepfather had no legal relationship to the daughter and he sought no assistance for her support outside the divorce judgment. It was not error for the trial court to dismiss the stepfather from this action. Furthermore, the daughter was permitted to proceed in this action, and she failed to show on appeal that any error complained of has injuriously affected her. Rule 45, A.R.App.P.
Nothing in the record indicates that anyone other than the father is this child's legal custodial parent. There was simply no one else seeking this child's custody or challenging the father's prima facie right to her custody. Therefore, it is clear that in the case sub judice, the father became the legal custodian of his daughter upon the death of the mother. We must now determine whether the child support provisions of the divorce judgment could be enforced in such a manner as to require the father to pay an arrearage directly to the child. One's obligation to support his minor child is so basic that it cannot be removed even by agreement or informal release. SeeTucker v. Tucker, 403 So.2d 262 (Ala.Civ.App. 1981). While it may be unusual, a trial court may order future payment of child support directly to the child from the noncustodial parent in certain circumstances and this court will affirm. Cornett v.Cornett, 398 So.2d 303 (Ala.Civ.App. 1981). Although the law is well settled that a court may order a noncustodial parent to pay child support, we have discovered no Alabama cases requiring a custodial parent to pay a child support arrearage
directly to a child of divorce who is living with another against that custodial parent's wishes. Our research reveals no authority in Alabama allowing a child of divorced parents to collect a child support arrearage pursuant to a divorcejudgment when the recipient parent is deceased and the surviving parent's attempts to assist have been refused.
The purpose of an order of support is to benefit the child, although payment may be directed to another. See Binns v.Maddox, 57 Ala. App. 230, 327 So.2d 726 (Ala.Civ.App. 1976). In the instant case, following her mother's death, the daughter received death benefit checks for the purpose of her support. Had similar benefits been paid on behalf of her father, rather than her mother, it seems clear that the purpose of a support order would have been accomplished, and the father would have been credited for the *Page 1367 
amount of those payments. See Binns, supra. While it is not so clear whether the payments on behalf of the mother in this case should be permitted to offset the father's support obligation pursuant to the divorce judgment, the death benefits accomplished the purpose of the support order.
In the case sub judice, the record discloses that the father attempted to make child support payments to the circuit court after the death of the mother. The court refused his payments, indicated that there was no recipient for the payments, and returned the checks to the father. Apparently, the appellate courts of this state have not previously faced a similar situation wherein the recipient custodial parent dies and the surviving paying parent has no recipient for the child support payments. There is authority which holds that remarriage of the same parents renders unenforceable future child support as ordered by their divorce judgment because the subsequent remarriage terminates the jurisdiction of the trial court. Rayv. Ohio National Life Ins. Co., 537 So.2d 915 (Ala. 1989). Arrearages for past-due support, however, are not forgiven by the subsequent remarriage, and a judgment for past-due support may be proper between the parties. Hardy v. Hardy,600 So.2d 1013 (Ala.Civ.App. 1992). Likewise, arrearages may be collected by the State. State Department of Human Resources v.Hulsey, 516 So.2d 720 (Ala.Civ.App. 1987). This case, however, does not involve a claim for arrearages by the parties to a divorce, nor such a claim by the State.
It appears that the father, against his wishes, allowed the daughter to stay with the stepfather. The stepfather had no legal obligation to support the daughter, sought no legal right to the custody of the child, and sought no support for her from her father, other than now, pursuant to the divorce judgment. Our research has revealed no Alabama authority that would permit the stepfather, or any other party, to prevail on a claim for a child support arrearage pursuant to a divorce judgment to which he was not a party, and for a child to which he has no legal relationship. To allow the stepfather or the child to recover arrearages of child support pursuant to the divorce judgment would have the effect of allowing a non-party the right to enforce a judgment. The father, as a party to the divorce judgment, could properly seek to enforce the judgment; however, the illogical result in that situation would be to require a custodial parent to pay himself child support. In this case, there is simply no one remaining who could properly enforce the provisions of the divorce judgment for a child support arrearage, and there is no other child support order. It was error for the trial court to order the father to pay the daughter an arrearage based upon the divorce judgment. Accordingly, that portion of the judgment must be reversed.
The daughter next contends that the trial court abused its discretion in denying her request for a continuance in order for her to obtain additional evidence to support her claim for educational expenses. See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). Continuances are not favored, and a trial court's denial of a motion for continuance will not be reversed absent an abuse of discretion. Barran v. Barran, 431 So.2d 1278
(Ala.Civ.App. 1983). The daughter presented other evidence supporting her claim for college support. The additional evidence the daughter was attempting to produce, although possibly helpful, was merely cumulative and unnecessary to the determination of her case. We find no abuse here.
The daughter's final argument is that the trial court erred in denying her petition for post-minority support for her college education expenses. The general principles concerning child support also apply to a motion for post-minority support for college expenses. Berry v. Berry, 579 So.2d 654
(Ala.Civ.App. 1991). We are mindful that where evidence is presented ore tenus, the trial court's judgment regarding child support is presumed correct unless it is not supported by the evidence and is therefore plainly and palpably wrong. Berry, supra.
A trial court has jurisdiction to require either parent or both parents to provide post-minority support for college expenses. Bayliss, supra.; see also Ex parte Jones,592 So.2d 608 (Ala. 1991). it is required *Page 1368 
that the action be filed before the child attains age 19.Ex parte Barnard, 581 So.2d 489 (Ala. 1991). The relevant factors for the trial court's determination include "all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education." Bayliss at 987. (Emphasis in original.) Further, Bayliss permits the trial court to take into consideration the standard of living the child would have enjoyed if the marriage had not been dissolved and "the child's relationship with [her] parents and responsiveness to parental advice." Bayliss at 987.
One primary factor to consider in determining whether an award of post-minority support for a college education is appropriate is the financial ability of the parent to contribute toward the child's college expenses. Bayliss, supra.
Further, other economic factors, e.g., whether the father can assist the child without undue hardship, the child's needs, and the actual college expenses, are appropriate for consideration. See Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990).
In the case sub judice, the father testified that his annual income is $31,200, and that his 9-year-old son from his present marriage lives with him. The father expressed his willingness to financially assist with his daughter's college education, and he testified that he desired to participate in her decisions concerning college. The father admitted, however, that he conditioned his financial support on the daughter's living with him, instead of her stepfather. Although not expressly determined by the trial court, the evidence regarding the father's financial resources could support a finding that he could not assist in paying his daughter's college education expenses without suffering undue hardship.
The trial court also considered other economic information, specifically, the daughter's financial resources, which included the benefits she receives because of her mother's death, a savings account established earlier for her college expenses, and her maternal grandparents' and her stepfather's indicated willingness and desire to financially assist her in college. The trial court may have also considered the daughter's willingness and expectation to contribute toward her college expenses, and her stated plans to work while in college.
Another factor to consider is the daughter's commitment to and aptitude for a college education. Bayliss, supra. The daughter intends to become a registered nurse and then pursue further education to become a nurse anesthetist. She has excelled in high school, and her aptitude is unquestionable. Her high school guidance counselor testified that the daughter is capable of obtaining a college education.
The trial court may have properly considered the daughter's relationship with her father and her willingness to consider his counsel. Bayliss, supra. The record reflects that the daughter and the father have a strained relationship. The most significant dispute is that the daughter continues to live with her stepfather despite her father's wishes that she live with him. Evidence regarding the strained relationship between the father and the daughter disclosed that both the father and the daughter may have contributed to that poor relationship. This factor alone, however, is insufficient to prevent the daughter from receiving assistance in going to college. See Thrasher,supra.
This court has recently reversed a trial court's award of college support for an emancipated minor. See B.A. E.A. v.State Department of Human Resources, 640 So.2d 961
(Ala.Civ.App. 1994). In that case, "the child left home due to a disagreement concerning his lifestyle" and ultimately was emancipated at his own request. B.A. E.A. at 962. In reversing the trial court's grant of college expenses to the child from the parent, this court stated, "a minor child who has had all disabilities removed, at his own request, so that he can manage his own affairs as an adult is no longer due support from his parents." B.A. E.A. at 962. Although this daughter was not legally emancipated during her minority, the evidence reveals that since her mother's death, she has chosen to manage her affairs without her father's guidance or support, and has, in fact, *Page 1369 
refused his offers of assistance. Similar to the child inB.A. E.A., supra, her actions indicate her choice to remove the disabilities of her minority, especially as to her father, and with that choice, she "is no longer due support from [him]." To hold otherwise appears inconsistent with the spirit and purpose of the college-expense exception for post-minority support.
The trial court's order did not specify what evidence it relied upon to deny the daughter's petition for post-minority support for college expenses. Given the many appropriate factors the court would have considered, we conclude that the record contains evidence supporting that denial, and we find no abuse of discretion. Accordingly, that portion of the trial court's judgment is due to be affirmed.
The result of this decision may seem harsh at first blush. It is important to note the unique facts in this situation and the nascent law developing in the area of post-minority support for college expenses. The trial and appellate courts of this state struggle on a case-by-case basis in these cases. Although the father here is not ordered by any court to financially assist his daughter in her efforts to obtain a higher education, there is nothing prohibiting him from doing so. We encourage the parties to reconcile their differences to the extent that the father may be supportive of his daughter in her educational pursuits. Furthermore, it also appears that although the daughter's petition has been denied at this time, she may not be precluded from having it reconsidered in the future, based upon changed circumstances, should the trial court expressly reserve jurisdiction on remand. See Stein v. Stein,623 So.2d 318 (Ala.Civ.App. 1993).
The daughter's request for an attorney fee is denied.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, J., concur.