729 So.2d 864 (1998)
Connie STINSON
v.
Phillip Wayne STINSON.
No. 2970499.
Court of Civil Appeals of Alabama.
September 18, 1998.
Rehearing Denied October 23, 1998.
Certiorari Denied March 12, 1999.
*865 M. Wayne Wheeler, Birmingham, for appellant.
Thomas B. Hanes of Barnett, Hanes, O'Neal, Duffee & Garfield, L.L.C., Birmingham, for appellee.
Alabama Supreme Court 1980298.
CRAWLEY, Judge.
The parties were divorced in 1994. The mother was awarded custody of the parties' two daughters, then 16 and 14 years of age, and the father was ordered to pay $600 per month in child support. He was also ordered to maintain medical insurance for the children and to reimburse the mother for onehalf of any medical expense not covered by that insurance. In addition, he was ordered to pay periodic alimony of $300 per month for 19 months and thereafter to pay $150 per month.
In February 1997, the father filed a petition to modify the divorce judgment, requesting that his alimony obligation be terminated and that his child support payment be reduced because the older daughter had reached the age of majority. The mother answered and counterclaimed, requesting an increase in alimony, post-minority support for the younger daughter, and reimbursement for one-half of the medical bills she had incurred on behalf of the children.
After a hearing, the trial court modified the divorce judgment by terminating the father's alimony obligation and by terminating the father's child support obligation for the older daughter. The court also ordered the father to pay $322 per month for the support of the younger daughter until she reached the age of majority, and then to pay post-minority support of $200 per month for 48 months for her college education. The court's order made the reduction in child support payments "effective retroactive to the month of March 1997." The court denied the mother's request for medical expense reimbursement.
*866 The mother appeals, arguing that the trial court erred by miscalculating the amount of child support due under the guidelines, by making its child support order retroactive, by terminating alimony, by awarding what she considers inadequate post-minority support, and by denying her claim for medical expense reimbursement.

I.
The mother contends that the trial court erred in computing the child support due under the guidelines because, she says, the court failed to include all of the father's sources of income. Specifically, she claims that the trial court failed to consider the father's bonuses and expense allowances as part of his gross income. Rule 32(B)(2)(a), Ala. R. Jud. Admin., defines "gross income":
"`Gross income' includes income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trusts, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, gifts, prizes, and preexisting periodic alimony."
(Emphasis added.) Rule 32(B)(4), in defining "other income," explains that
"[e]xpense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business shall be counted as income if they are significant and reduce personal living expenses."
(Emphasis added.) "In accord with Rule 32, Ala. R. Jud. Admin., the trial court must take into account all sources of income of the parents when computing support obligations. The trial court has no discretion in this matter." Massey v. Massey, 706 So.2d 1272, 1274 (Ala.Civ.App.1997) (emphasis added).
The father is employed by SCI, Inc., formerly known as Johns-Ridout's Funeral Service, as the location manager of a funeral home in Birmingham. He testified that his gross monthly pay was $3,156. On cross-examination, he acknowledged that he had also received, for the three quarters preceding the hearing on the petition to modify, a quarterly bonus of $1,185. In addition, he admitted that he had the use of a company car, a 1996 Chevrolet Caprice, for which his employer supplied the fuel and paid for the insurance. His employer also provided him with a clothing allowance, consisting of two suits per year. At trial, the father testified that he "received a [Form] 1099 for [his] car use," but that he did not remember the amount of income stated on that form.
The CS-42 form in the record reveals that the trial court calculated the father's child support obligation based upon a monthly gross income of $3,156. Rule 32 requires that, in determining child support obligations, bonuses and expense reimbursements be included in gross income. Massey v. Massey, 706 So.2d at 1274. See also Spillers v. Spillers, 707 So.2d 256 (Ala.Civ.App. 1997); Hubbard Hall v. Hubbard, 697 So.2d 486 (Ala.Civ.App.1997); Tucker v. Tucker, 681 So.2d 592 (Ala.Civ.App.1996); Rogers v. Sims, 671 So.2d 714 (Ala.Civ.App.1995). Because the trial court did not include the father's bonuses as income in calculating the father's child support obligation, we must reverse the judgment and remand the cause for a recomputation of the amount of child support due under the guidelines when all of the father's income is counted.
We are unable to ascertain from the record the value of the father's automobile and clothing-expense reimbursements. Rule 32(E) mandates that the parties file an "Income Statement/ Affidavit" (CS-41) form. Rule 32(F) requires the parties to verify the information on their CS-41 forms with tax returns or "such other documentation as the court directs." Rule 32(F) further mandates that
"[d]ocumentation of earnings used in preparing the [CS-41] form shall be maintained by the parties and made available as directed by the court."
When the record establishes that an obligor has additional income that he or she did not report on the guidelines form, but the appellate court is unable to determine the amount of that income, the appellate court may remand with directions that the trial court determine the amount. See In re Marriage of Griffin, 275 Mont. 37, 42, 909 P.2d 707, 710 *867 (1996); Dalessandro v. Dalessandro, 366 Pa.Super. 479, 531 A.2d 518 (1987). On remand, we direct the trial court to have the father complete an accurate CS-41 form that includes and documents the value of his car and clothing-expense reimbursements. The trial court should then determine whether those reimbursements "are significant and reduce personal living expenses," and thus should be counted as income to the father.

II.
The older daughter reached the age of majority on April 29, 1996. The father filed his petition to modify on February 12, 1997. The trial court's judgment of October 31, 1997, terminated the father's obligation to pay child support for the older daughter and made the reduction in the father's child support obligation retroactive to March 1997.
The mother argues that, although a trial court has the authority to make an increase in child support retroactive to the date of the filing of a petition to modify, see State ex rel. Nathan v. Nathan, 680 So.2d 339 (Ala.Civ. App.1996), it has no authority to make a reduction in child support retroactive. Neither Rule 32, Ala. R. Jud. Admin., nor the decisions interpreting the rule, support the mother's argument. Rule 32(A)(3)(a) states:
"The provisions of any judgment respecting child support shall be modified only as to installments accruing after the filing of the petition for modification."
By its terms, the rule allows the trial court to make any judgment modifying child supportnot just a judgment increasing child supportretroactive to the date of the filing of the petition. In State ex rel. Dunnavant v. Dunnavant, 668 So.2d 851 (Ala.Civ.App. 1995), this court affirmed a trial court's retroactive modification that reduced child support.
The mother argues that it is an unfair hardship on her to repay the $2,224 in child support she received from the father between the time he filed his petition and the time of the court's modification order. We see no unfairness in the retroactivity order. The mother was aware that the divorce judgment required the father to pay child support "until [the] children become emancipated, marry or reach majority." The mother knew that the older daughter had reached the age of majority, and she understood that the father's petition to modify claimed that his support obligation to the older daughter had ended. Therefore, the mother should have been aware that she might have to repay any support she received for the older daughter after the father filed his petition to modify.
In Part I of this opinion, we instructed the trial court to recalculate the father's child support obligation by adding the father's bonuses to his income, and by determining whether the father's automobile and clothing expense allowances should be counted as income. When the trial court recalculates the father's child support obligation, it should also recalculate the amount that the mother owes the father for overpayment of child support, using the correct amount of child support as determined on remand.

III.
The mother maintains that the trial court abused its discretion by terminating the father's obligation to pay her alimony. At the time of the divorce, the mother was working and was attending nursing school. Her monthly gross income was $350. The father's monthly gross income was $2,200. The divorce judgment ordered the father to pay alimony of $300 per month for 19 months, at which time the mother was expected to finish nursing school, and then to pay alimony of $150 per month.
At the time of the modification hearing, the mother was working full time as a nurse and her monthly gross income was $2,130.61. She testified, however, that her income would soon be reduced because she planned to move to Pensacola, Florida, to take a part-time nursing job and to help care for her father, who had Alzheimer's disease. The mother testified that monthly expenses were approximately $900 for herself and $875 for her older daughter. She explained that the parties' older daughter had had a child out of wedlock and that the baby's father was contributing no support. The mother testified that she was helping her daughter and grandchild by paying their rent and utilities.
*868 Since the time of the divorce, the mother has finished nursing school, has become self-supporting, and has experienced a sixfold increase in income. Those facts are sufficient to constitute a material change in circumstances justifying the termination of the father's alimony obligation. The trial court was within its discretion in determining that the mother's voluntary assumption of responsibility for her aging father, her unwed daughter, and her infant grandchild should not be passed along to her former husband.
"It is well established in Alabama that the modification of an alimony provision based upon changed circumstances is a matter that rests within the circuit court's sound discretion. Furthermore, the ore tenus standard is applied to the ruling of the circuit court; thus, a presumption of correctness attaches to the ruling and the ruling will not be reversed unless it is not supported by the evidence and is clearly an abuse of the court's discretion."
Ex parte Millard, 683 So.2d 1002, 1003 (Ala. 1996). Our supreme court has issued the following directive to this court:
"[W]hen ... the Court of Civil Appeals reviews a circuit court's order, it is not to substitute its judgment of the facts for that of the circuit court. Instead, [an appellate court's] task is simply to determine if there was sufficient evidence before the circuit court to support its decision against a charge of arbitrariness and abuse of discretion."
Id. We conclude that there was sufficient evidence before the circuit court to support its order terminating alimony.

IV.
The mother argues that the trial court abused its discretion by awarding only $200 per month in post-minority support for the younger daughter's college education.
The younger daughter attends the University of Alabama in Tuscaloosa. The mother presented evidence, which was unrefuted by the father, that the cost of tuition, room, board, telephone, books, and supplies is $3,433 per semester, for a four-year total of $27,464. The mother also presented evidence, unrefuted by the father, that additional living expenses and insurance would add $13,000 to the four-year cost, for a total of $40,464.
The mother points out that a post-minority support award of $200 per month$9,600 for four yearsis only 23 percent of the total college expense. She argues that the trial court abused its discretion by requiring the father to pay what amounts to less than one-fourth of the cost of his daughter's college education.
In Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), our supreme court held that the trial court has discretion whether to order post-minority support at all, and that, in exercising that discretion, the trial court shall consider
"all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."
Ex parte Bayliss, 550 So.2d at 987 (emphasis in original). In addition, the trial may consider
"the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance."
Id.
The daughter is currently attending college, so her "commitment to, and aptitude for, the requested education" are undisputed. The parents' aggregate financial ability to contribute to the daughter's education is also undisputed. The mother argues that the father should have been required to pay a greater share of the educational costs. At trial, the father argued that he should not be required to pay any of the costs because (1) the daughter had no reason to expect that he would provide a college education for her and (2) he and the daughter are completely estranged.
The father's arguments are based on the two factors that the Bayliss court said a trial court may consider in determining post-minority support:

*869 "the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance."
The father did not attend college after high school. He completed a two-year course of study in mortuary science at a junior college after he had been employed for a number of years. The mother attended college for three years but did not complete her education until later in life, when she obtained a nursing degree in 1995. The father argues that because neither parent has a four-year college degree and neither pursued any higher education immediately after high school, the younger daughter had no reason to expect that she would have a college education provided for her.
The father's argument that he and the younger daughter have no relationship is fully supported by the record. The testimony at trial established that, with the exception of a few telephone calls and one Christmas visit, the two have had virtually no contact in the four years since the divorce. The evidence tended to show that the alienation between father and daughter centers around the father's wife. The daughter indicated that she wanted to have a relationship with her father, but she wanted to see him alone. The father expressed a desire to be involved in his daughter's life, but stated that he would not agree to exclude his wife from any outings with the daughter.
This court has repeatedly stated that the existence of a strained relationship between parent and child does not prevent the child from having the opportunity to obtain a college education. See Payne v. Williams, 678 So.2d 1118 (Ala.Civ.App.1996); Newman v. Newman, 667 So.2d 1362, 1368 (Ala.Civ.App. 1994); Quillin v. Quillin, 652 So.2d 294 (Ala. Civ.App.1994); Heath v. Heath, 647 So.2d 769 (Ala.Civ.App.1994); Anonymous v. Anonymous, 646 So.2d 28 (Ala.Civ.App. 1993); Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990).
In Newman v. Newman, supra, we stated:
"Evidence regarding the strained relationship between the father and the daughter disclosed that both the father and the daughter may have contributed to that poor relationship. This factor, alone, however, is insufficient to prevent the daughter from receiving assistance in going to college."
667 So.2d at 1368. Although the existence of a strained relationship will not generally suffice to deny Bayliss support altogether, it is a factor for the court to consider and it may, therefore, be the basis for reducing what might, under other circumstances, be a greater amount of support. The estrangement of the father and the daughter evidently weighed heavily in the trial court's decision. At one point during the testimony, the court addressed the following remark to counsel for the mother:
"THE COURT: Well, these kids want whatever they want. You know, they want to go to college but they don't want to have anything to do with daddy; they're going to pay a price for it, counsel."
Taking into account all the circumstances presented to the trial court, and keeping in mind that the trial court saw and heard the witnesses, we cannot hold that the court abused its discretion in setting the amount of post-minority support.
"The general principles concerning child support are `equally applicable to a Bayliss motion for post-minority support.' Berry v. Berry, 579 So.2d 654, 656 (Ala.Civ.App. 1991). Child support is a matter that rests within the sound discretion of the trial court, and its judgment will not be reversed, absent a showing that it abused its discretion. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App.1985). Additionally, where the evidence is presented ore tenus in a child support case, the trial court's judgment is presumed correct. Berry, supra."
Wells v. Wells, 648 So.2d 617, 619 (Ala.Civ. App.1994).

V.
The mother testified that she had paid $1,456.20 in medical expenses for the children that were not covered by insurance. *870 She submitted documentary evidence to support her testimony. The father offered no proof to refute her evidence. Although the divorce judgment requires the father to reimburse the mother for one-half of any medical expense not covered by insurance, the trial court did not order reimbursement. Therefore, we conclude that the trial court erred. "The trial court lacked the authority to `forgive' or set aside the [father's] obligation to pay for the children's noncovered medical expenses that had already accrued." Morin v. Morin, 678 So.2d 166, 169 (Ala.Civ. App.1996). See also Ex parte State ex rel. Horton, 678 So.2d 106 (Ala.1996); Jordan v. Jordan, 688 So.2d 839, 841 (Ala.Civ.App. 1997). We direct the court to amend its judgment so as to require the husband to pay $728.10, one-half of the medical expense not covered by insurance.

VI.
Each party requests an attorney fee on appeal; the requests are denied. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded with directions.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs specially.
ROBERTSON, Presiding Judge, concurring specially.
While I concur in the affirmance of the trial court's reduction of the father's obligation to pay child support, I do so solely because Rule 32(A)(3)(a), Ala.R.Jud.Admin., permits a trial court to modify child support installment payments "accruing after the filing of the petition for modification" (emphasis added). Thus, it was the father's petition to modify that placed the mother on notice that the child support installments she received while the petition to modify was pending were subject to retroactive reduction.
However, because the father's original child support obligation was not broken down into specific amounts for each of the parties' two daughters, any knowledge that the mother may have had that the older daughter had attained the age of majority was immaterial. The father's duty to pay $600 per month persisted until he petitioned for, and received, a judgment modifying his support obligation. "When the order establishing the amount of child support to be paid does not designate a specific amount for each child, events such as a child's reaching the age of majority or a child's marriage do not automatically modify a child support judgment." State ex rel. Dep't of Human Resources ex rel. Ratliff v. Curran, 716 So.2d 1196, 1199 (Ala.Civ.App.1997).