MOORE, Judge,
concurring in the result.
I agree that the judgment should be reversed and the case remanded to the trial court, but I do so for reasons different than those upon which the main opinion relies. As explained below, I believe that the trial court erred in construing the trust instrument and that that erroneous construction led the trial court to exclude the trust funds from its consideration as to whether Chris Goetsch had a financial need for postminority educational support from his parents. I also believe that this court should address the other issues raised by the father so that, on remand, the trial court can correctly and finally resolve this dispute.
In Ex parte Bayliss, 550 So.2d 986 (Ala.1989), our supreme court established that, under certain circumstances, parents may be ordered to pay educational expenses of a child even though the child has attained the age of majority and is otherwise emancipated. Under Bayliss, the primary factor to be considered is whether the child has a need for financial assistance in order to pursue his or her education. That need, of course, depends on the “financial resources of ... the child.” 550 So.2d at 987. Obviously, if a child has available financial resources by which the expenses of his or her education can be fully met, the child would have no need for Bayliss support from his or her parents. Likewise, if the child has the financial resources to pay a portion of his or her educational expenses, the child would be only partially dependent on his or her parents for support. It is only when a child has no financial resources to pay educational expenses that his or her parents may be ordered to carry that entire burden. Thus, in every Bayliss case, a trial court must initially determine the scope of the financial resources available to the child to fund his or her education before proceeding to any further considerations.

’

In this case, the evidence shows that the paternal grandparents of Chris established a trust for his benefit. Section 4.1 of the trust instrument provides, in pertinent part, that the “[n]et income or principal of the trust may be used when [Chris] is in need of funds to meet the reasonable expenses of[, among other things,] ... [education ... of [Chris].... ” In refusing to consider the trust funds as a financial resource available to Chris to pay his educational expenses, the trial court concluded that “educational expenses were not the primary purpose of said trust....”
I do not believe it matters whether the trust funds were intended primarily for Chris’s education. The fact remains that the settlors specifically expressed that the trustees could use the principal and income from the trust to pay Chris’s reasonable educational expenses. The only pertinent inquiry was whether the trust maintained funds available for that permissible use, regardless of the primacy of other permissible uses. In that regard, the evidence shows that the trust had accumulated $237,305.71 in assets by the time of the trial. The evidence also shows that the trustees, to whom § 4.1 of the trust instrument gave total discretion as *794 'to how the trust funds were to be used, had committed to Chris to pay from the trust funds the costs of tuition, fees, rent, food, a telephone, a laptop computer, Internet access, and books while he pursued his undergraduate degree at Auburn University, having refused to pay only incidental costs, such as transportation and health insurance. Thus, it is undisputed that the trust has funds that the trustees have designated to be used to pay the reasonable costs of Chris’s college education.
The trial court nevertheless concluded that those funds should not be considered a financial resource available to Chris because “the trust explicitly indicates it should not be used to defray obligations of the parents.” Presumably, the trial court was referring in its judgment to the proviso to § 4.1, which states
“that no payments to or for the benefit of [Chris] shall be made so as to reduce, diminish or discharge the legal liability of any person (including the trustors and the trustee) for the support of [Chris].”
The trial court evidently reasoned that, because a parent may have a legal liability to pay for the educational expenses of a child under Bayliss, the settlors intended that no trust funds would be used to relieve a parent of that liability.
However, the trust instrument specifically states that the trust is to be interpreted and administered in accordance with California law. Hence, the settlors must have intended by the proviso in § 4.1 only that the trust funds could not be used to defray the liability that any person would have to support Chris under California law. In referring to “legal liability ... for ... support,” the settlors were not referring to any obligation to pay postmi-nority support that a court could impose involuntarily upon a parent under Alabama law.
Unlike Alabama law, California law does not authorize a state court to impose a duty on parents to fund the postsecondary educational expenses of a child past the age of 18 unless the parents have voluntarily agreed to do so. See Cal. Fam.Code § 3901. The record contains no evidence indicating that the parents voluntarily agreed that the father would pay for Chris’s postsecondary educational expenses after he attained the age of 18. Hence, under California law, the father has no duty to pay any of those expenses and the payment of those expenses by the trust cannot possibly defray any of the father’s “legal liability” to support Chris. Contrary to the conclusion reached by the trial court, the terms of the trust do not prevent the trustees from paying any of the educational expenses the trustees have agreed to fund.[4]
Because the terms of the instrument allow the trustees to pay the reasonable expenses for Chris’s education, and because the evidence is undisputed that funds have been designated for that purpose, the trial court should have considered those funds as a financial resource *795 available to Chris when assessing his need for Bayliss support. By failing to do so, the trial court essentially determined that Chris would be totally dependent on his parents to fund his college education. That error resulted in an award of postmi-nority support that far exceeds Chris’s true financial need. For that error, the judgment is due to be reversed and the case remanded for the trial court to reconsider its award in light of the availability of the trust fund to pay many of the costs of Chris’s college education.
Because it is clear that the trustees will not agree to pay all the expenses within the scope of a Bayliss award, on remand the trial court will have to consider whether the father will have to pay any part of the remaining expenses. The father argues that he should not have to do so because the undisputed evidence showed that he and Chris have a strained relationship. In Bayliss, the supreme court held that the relationship between the parent and the child is a factor that a trial court should consider when considering an award of postminority support. 550 So.2d at 987. This court, however, “has repeatedly stated that the existence of a strained relationship between parent and child does not prevent the child from having the opportunity to obtain a college education.” Stinson v. Stinson, 729 So.2d 864, 869 (Ala.Civ.App.1998). “In no instance has this court reversed a trial court’s imposition of postminority educational support solely because the evidence at trial reflected that the relationship between parent and child was so broken as to be a complete impediment to the receipt of such support.” Dunigan v. Bruning, 64 So.3d 645, 651 (Ala.Civ.App.2010). Although a trial court may consider the poor relations between a parent and a child, it cannot, for that reason alone, prevent a child from receiving financial assistance in going to college. Newman v. Newman, 667 So.2d 1362, 1368 (Ala.Civ.App.1994). In its judgment, the trial court obviously determined that the relationship between Chris and the father would not diminish in any way the obligation of the father to pay Bayliss support. I find no basis for placing the trial court in error in that regard; however, on remand, I see no reason why the trial court may not again reassess that factor when deciding what contribution, if any, the father should have to pay for the educational expenses the trust will not cover.
I also agree with the main opinion that the trial court erred in ordering the father to pay Bayliss support retroactive to the date Chris began attending college. 66 So.3d at 792 n. 3. A court may award Bayliss support retroactive only to the date of the filing of the petition for such support. Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ.App.1999). I further agree with the father that any retroactive award should specify the exact amount awarded and that that amount must be based on evidence in the record. See Stanford v. Stanford, 628 So.2d 701, 704 (Ala.Civ.App.1993). On remand, the trial court should determine exactly the amounts incurred by Chris for recoverable educational expenses since the date of the filing of the petition for Bayliss support. The trial' court must then specify what portion of those expenses not payable by the trust the father shall pay, if any.

. The main opinion rejects the father's argument on this point because Alabama law, as the law of the parent's domicile, controls the determination of the extent of the duty of a parent to support a child. See 66 So.3d at 791 n. 2. The father is not seeking to avoid Alabama law. The father acknowledges that, under Alabama law, a trial court may impose upon him a duty to pay Chris's postminority educational support if Chris does not have the financial resources available to meet his educational expenses. The father is simply arguing that, in determining the availability of the trust funds to defray the costs of Chris's education, California law governs. Accepting the father's argument does not, in any manner, violate any law requiring the duty of support to be determined by the law of the domicile of the parent.