THIGPEN, Judge.
This is a post-divorce proceeding involving ordered payment of post-minority support.
The mother filed a petition for contempt and a petition for modification concerning the child support obligation of the father for the benefit of the parties’ younger son. The son is over the age of nineteen, has a learning disability, and is enrolled in college at the University of North Alabama. The father answered and counterclaimed, requesting to be relieved of paying post-minority support. After receiving evidence ore tenus, the trial court entered an order increasing the support obligation from $400 per month to $550 per month, and awarding the mother $3,000 for an attorney’s fee. The father appeals.
It appears that the issues raised by the father in this appeal are as follows: (1) Did the trial court abuse its discretion by increasing the amount of child support? (2) Did the trial court abuse its discretion in refusing to terminate, or at least set a time limit on the father’s obligation to pay support for his son’s college expenses? (3) Did the trial court abuse its discretion in finding the father in contempt? and (4) Did the trial court abuse its discretion in awarding the mother an amount for an attorney’s fee?
At the outset, we note that when a trial court's judgment follows the presentation of evidence ore tenus, a presumption of correctness automatically attaches and that judgment will be affirmed when it is supported by competent evidence, unless *1171 shown to be palpably wrong. Blankenship v. Blankenship, 534 So.2d 320 (Ala.Civ.App.1988). Further, the issue concerning child support and its subsequent modir fication is committed to the discretion of the trial court and the judgment will not be reversed absent a showing that the trial court has abused its discretion, or that its determination is plainly and palpably wrong. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App.1985).
Our supreme court has determined that when a marriage is terminated by divorce, the trial court has jurisdiction to require the parents to provide post-minority support for a college education. Ex parte Bayliss, 550 So.2d 986 (Ala.1989). In that case, the supreme court increased the equity powers of Alabama courts to provide that the duty of parents to support and educate their children extends beyond the age of majority. That case enlarged the rule previously established in the case of Ex parte Brewington, 445 So.2d 294 (Ala.1983), which expanded the equity power of the trial court to include the power to require parental support of a child beyond its majority if the child is so mentally or physically disabled as to be unable to support himself. See, Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App.1990).
The power to require the parents to provide post-minority support for a college education is not totally unbridled. The supreme court set out certain factors for the trial court’s consideration and directed the trial court to consider “all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child’s commitment to, and aptitude for, the requested education.” Bayliss, 550 So.2d at 987. Additionally, Bayliss, supra, permits the trial court to consider the standard of living that the child would have enjoyed if the marriage had remained intact and “the child’s relationship with his parents and responsiveness to parental advice and guidance.” Bayliss, 550 So.2d at 987. This court expressed in Thrasher, supra, that the fact that a parent and child have a strained relationship does not preclude the child from having the opportunity to obtain a college education.
In the instant case, the financial resources of the parents are not at issue and we will not address that issue. We concern ourselves here with other factors, i.e., the child’s commitment to pursuing a degree, the child’s aptitude, the child’s financial resources, the child’s relationship with his parents and his responsiveness to parental advice and guidance, etc. Bayliss, supra.
Our review of the record reveals pertinent facts and evidence that were before the trial court. The parties divorced in 1984 and, at that time, the mother received custody of the two children and the father was ordered to pay child support. An agreement between the parties concerning the child support was made a part of the divorce decree. In that child support provision, the father acknowledged the child’s learning disability and agreed to continue to support the child “even though the child may have attained majority” until the child became fully self-supporting, or until the child no longer resided with the mother, whichever occurred first. The older child obtained a college degree with the assistance of the father and is not a factor in this case.
Numerous modifications have been considered by the trial court since the original divorce decree was entered. At the time this modification was before the trial court, the younger son was 23 years old and the father was ordered to provide post-minority support for this son. Although this son has a learning disability, he is attending college. There are differing opinions regarding his potential for success in pursuing a college degree.
In 1988, the decree was modified to require the father to make monthly child support payments directly to the son’s checking account rather than to the mother, and there were certain restrictions placed on the son’s use of the account. The father and son disagreed over the son’s management of the account when the son began writing numerous checks to “cash” on successive days when school was not in session. Ultimately, when the son *1172 wrote a large check to transfer the entire balance to an account where his father could not supervise his account management, the father did not make the payments for two months and the mother filed the petition that began this latest court action.
The father testified that he withheld the payments from the son for two months in an effort to discipline the son “for chewing his father out.” The father testified that it was his understanding that the payment to the son’s account was a business agreement with his son to “go to college, get passing grades, send [the father] the statements, and [the father] will pay his expenses.” The father testified that he withheld two checks to deal with what he considered to be the son’s defiance towards him and the son’s abuse of the account, as well as an attempt to get his son to comply with the accountability terms of the 1988 modification. The father testified that the son had told the father that he had other money and did not need the father’s money. The father testified that withholding the checks was an effort to discipline the son and was not done to intentionally violate a court order. It is undisputed that the father has the ability and desires to pay support for this son if needed. When the mother filed her petition asking that the father be held in contempt for failing to pay the support, the father immediately paid the two months he had withheld from the son before this case came to trial.
There was testimony from the older son and the father that they had worked together to manage that son’s finances during college and that such arrangement was mutually beneficial. Both testified that this was the same type arrangement that the father was attempting to have with the younger son. They also testified that the younger son would not come to the father for assistance in managing his college finances as the older son had, and that the younger son would lose his temper when attempting to discuss his accounting. The record reflects that the relationship between the younger son and the father deteriorated rapidly during the time the father made the payments directly to the son and the son was charged with the responsibility of managing an account. Further, the father testified that the son said his mother told him he did not have to report to his father.
The record reveals that the son graduated from high school via the special education program. He is currently living in an apartment in Florence and attending college classes working towards a degree in social work. His learning disability, in part, thwarts his ability to properly sequence and record things on paper. Special arrangements are made for him to have recordings or the class notes of other students to aid him in studying. Special testing arrangements are also made for him. The son and others testified that the son has those special arrangements and others, which often involve his instructors. The son maintains passing grades in his coursework apparently due to some type of special arrangement that allows him to audit courses when he experiences difficulty in them, rather than allow him to risk failing them.
There was testimony that the son had been attending college classes for over three years and has achieved only sophomore status. The son’s monthly living expenses were itemized and admitted along with the son’s testimony regarding the accurateness of those expenses. However, the son also testified that his grandmother and mother give him money and pay for some of the items for him, such as car repair bills and health insurance, which were on his itemized expense list. The mother testified that she sends her son money each month and that his grandmother sends him about $200 per month. She also testified that the son has a car, some shares of stock, that his name is on a certificate of deposit valued at approximately $5700, and that he has a joint stock market account with his grandmother valued at approximately $4800. There was also testimony from the son and others that an educational grant through the rehabilitation program pays the son’s tuition, books, school fees, and up to $180 of his school supplies. The grant has no time *1173 limit for him to complete his college degree.
There was evidence from rehabilitation professionals that the son had been successful in obtaining and maintaining employment. The son testified that he had held several minimum wage jobs since high school. There was also testimony regarding out-of-state summer employment through the church that the son had performed successfully for the two summers before this action. The mother testified that during the time the son was earning money on these summer jobs and had no living expenses, the father continued to pay the $400 per month child support. There was also testimony regarding the father’s investment in high pressure steam cleaning equipment for the purpose of helping the son learn a skill and establish a business. However, the son showed no interest or effort in learning to use the equipment.
There was conflicting evidence regarding the son’s aptitude for college. The son was evaluated at the Sparks Center in Birmingham at the request of the Alabama Vocational Rehabilitation Center before he finished high school. The mother testified that the Sparks evaluation disclosed that the son was not college material. She also testified that when they specifically indicated that the son was capable of janitorial work, the son became angry and asked if he could at least try college. It was necessary for the son to take extra courses after high school to attain college entry level. There was evidence from rehabilitation professionals that once the son was in college and experiencing some degree of success, that allowing him to continue college would improve his employability and independent living skills.
In the first issue, the father contends that the trial court abused its discretion in increasing his child support obligation. He argues that the mother, as the party seeking the change, had the burden of proving a change of circumstances since the last court decree to warrant the increase and that she failed to meet that burden. We agree.
Our review of the record reveals that the mother did not allege in her pleadings, nor did she attempt to prove, that there had been a material change of circumstances since the last, modification to justify an increase. Careful reading of the mother’s modification request discloses that she asked the trial court to modify the 1988 modification to change the terms of the payment, not the amount. Specifically, she asked the trial court to reinstate payment to her of “the sum of $400 for the use and benefit of the parties’ son.” The record is replete with evidence of the son’s current expenses and financial resources. There is nothing to indicate what his needs were in the past or that they had increased in any way since the last modification. The record is totally devoid of anything to indicate that the son’s needs had increased or how they compared to what they were at the time of the previous modification.
We are mindful of the multitude of cases following the well-established principle that child support and subsequent modifications are matters that lie within the discretion of the trial court. Brannon, supra. However, the determination of whether to modify a prior decree of child support is based upon a showing of changed circumstances regarding the child’s needs and the ability of the parent to satisfy those needs. Stiefelmeyer v. Stiefelmeyer, 485 So.2d 729 (Ala.Civ.App.1986). Here, the father volunteered that his income had increased and that he was not only able, but stood readily willing to pay whatever support was needed by his son. However, there was no evidence presented by anyone to indicate that the son’s needs had increased since the last modification. Simply stated, there is nothing to show that the son needed more than he was already receiving from his father. There must be evidence before the trial court that a material change in circumstances has occurred before the child support obligation can be modified. Sansom v. Sansom, 409 So.2d 430 (Ala.Civ.App.1981). Accordingly, increasing the father’s child support obligation without any evidence to support such change constituted an abuse of discretion.
*1174 The father next argues that the trial court abused its discretion in refusing to terminate, or at least set some limitation, on his obligation to pay support for his son’s college expenses. The father, who is college-educated himself and assisted the other son in obtaining a college degree, does not oppose assisting the younger son in obtaining a degree. He readily admits that a college degree is helpful and that he desires for his son to have one if he is capable. It is the father’s contention that the son may not be capable of such and that he prefers that the son pursue something for which he has the aptitude. He also argues that even if the son succeeds in continuing to pursue a degree, it may take many more years at the present rate to obtain the degree, if his son is capable to at all. He argues that a father cannot be required to pay post-minority child support for the purpose of college expenses indefinitely. It is his contention that without some type of limitation, a child could remain in school many surplus years at a father’s expense without making progress towards a degree. Further, the father argues that the trial court did not properly consider “all relevant factors that shall appear reasonable and necessary” pursuant to the mandates of the supreme court in Bayliss, supra. Specifically, he contends that the trial court should consider here the son’s aptitude, the son’s attitude towards the father, and the son’s financial resources.
This case is an offspring of those nascent cases concerning post-minority support from divorced parents primarily for the purpose of paying educational expenses. However, this case is complicated by the fact that the son is hindered by a learning disability which may possibly limit the son’s success in college and, therefore, any benefit he might have from further educational pursuits. Further, his disability may limit the extent that he may be able to support himself in the future.
The general rule in Alabama was that the statutes providing for child support applied only to “minor” children and that the trial court was without jurisdiction to order a parent to support an adult child. Reynolds v. Reynolds, 274 Ala. 477, 149 So.2d 770 (1963). However, in Brewington, supra, the supreme court recognized that an exception to that rule existed “when the adult child is so mentally and/or physically disabled as to be unable to support himself.” Brewington, 445 So.2d at 296. Thus, Reynolds was specifically overruled to the extent that it was inconsistent with the holding in Brewington, supra, which expanded the interpretation of the term “children” in the Alabama child support statute to include children who continue to be disabled beyond their minority and imposed a duty on the parents to support them.
We have considered the Brewington exception in the following cases: Elliott v. Bretherick, 555 So.2d 1109 (Ala.Civ.App.1989) (in order to extend the parent’s legal obligation to pay child support after the age of majority, the child’s disability must exist during its minority and continue beyond minority); Martin v. Martin, 539 So.2d 283 (Ala.Civ.App.1988) (modification entered for the benefit and well-being of the parties’ adult invalid daughter was proper); Skates v. Skates, 520 So.2d 525 (Ala.Civ.App.1988) (mother entitled to child support from father for trainable mentally retarded adult child who could not work except in a controlled workshop-type environment); and Allen v. Allen, 465 So.2d 424 (Ala.Civ.App.1985) (fact that mentally impaired adult children were capable of doing some kinds of work considered in support award).
From our review of the record, and specifically the modification order, we find it unclear exactly what authority, if any, exists for the trial court to order the father in this case to pay post-minority support for this child. While the record evidence indicates that this son has a learning disability that impedes his success in educational pursuits, there is absolutely nothing in the record to establish that this son cannot maintain employment, live independently, and be self-supporting. On the contrary, the record contains evidence that the son has been employed successfully, including two summers in which he did missionary- *1175 type work out-of-state. There is evidence showing that he lives alone in an apartment in a different city than his parents, drives his own car, and independently performs the day-to-day functions of living. The evidence of the special arrangements made for the son to succeed in his college classes does not show that the son falls into the Brewington exception which imposes a duty on the father to make support payments for the child after obtaining his majority.
The child was seventeen years old when the original divorce decree was entered. That decree included an agreement between the mother and the father acknowledging the child’s learning disability and indicating the father’s agreement to provide post-minority support for educational purposes, or otherwise. The contractual agreement to provide post-minority support terminated either: 1) when the child became self-supporting, or, 2) when the child no longer resided with the mother, whichever occurred first. The 1988 modification, which was voluntarily entered into by the parties, ordered the father to continue to pay the support “as long as the son is pursuing a course of study and making reasonable progress toward a degree.”
Did the trial court order post-minority support for this child for the purpose of obtaining a college education under the rationale of Bayliss, supra? If so, the trial court must consider all relevant factors that are “reasonable and necessary” to order support under that rationale. Bayliss, supra. The record evidence is that the son had been enrolled in college for three and a half years at the time of this trial and had not completed half of the college requirements. The evidence indicates that his tuition, bpoks, other school-related fees, and supplies are completely paid by another source, and will continue to be paid for an indefinite period. Bayliss, supra, does not specify with exactness how long or how much a parent must pay for the college education of the child. The father’s argument that neither he, nor any noncustodial parent, should be required to pay indefinitely for an adult child’s education is meritorious.
In Bayliss, supra, our supreme court questioned, “Had the Bayliss family unit not been put asunder by divorce, would the father, who had attended college and was a man of significant means, have continued to provide a college education for Patrick ... after Patrick reached 19 years of age?” Bayliss, 550 So.2d at 994.
In the instant case, similar questioning is proper. Had the family not been put asunder by the divorce, how long would the parents have provided a college education for this son? At this point in the development of the post-minority education expense cases in Alabama, the amount or the time that a parent should be required to pay for the college-related expenses of adult children has been mentioned only slightly. See Berry v. Berry, 579 So.2d 654 (Ala.Civ.App.1991), wherein the trial court ordered the father to pay the equivalent of four years of undergraduate education; and Thrasher, supra, in which the trial court continued the father’s child support obligation as long as the child is enrolled and passing as a full-time student in a state-supported institution of higher learning. In the instant case, the evidence reveals that special arrangements were made for the son to be enrolled in and be successful in college classes, and that such would be paid for by a special educational grant indefinitely.
The supreme court instructed that the primary factors for consideration in determining whether to grant post-minority support for educational purposes must include the financial resources of the parents and the child. Bayliss, supra. The record here does not indicate that the trial court properly considered such in determining the amount of support it awarded. It appears that the trial court in the instant case may have applied the child support guidelines in establishing the amount. We have expressly determined that the child support guidelines for a minor child do not apply to the determination of an amount for providing or contributing to college expenses af *1176 ter the child reaches majority. Thrasher, supra.
The father also questions the reasonableness of the expectation of success for the son to obtain a college degree. Bayliss, supra, specifically requires that the child’s aptitude for the requested education be considered. There is ample evidence in the record that this child may not have the required aptitude. The record is totally devoid of evidence to indicate that the son is benefiting from long-term enrollment in college, even under special circumstances, other than to speculate that possibly staying in college may increase the son’s chance of employability in the future. There was no evidence to indicate how many more years it might take for the son to complete college, or, if in fact he can even do so. The father speculated that, if the son continued at the present rate of success and the higher level courses did not cause the son any more difficulty than the preliminary coursework, then he might be able to complete an undergraduate degree in six to nine more years.
There was no evidence presented to contradict the father’s and older brother’s testimonies regarding the son’s poor relationship with the father and the son’s unresponsiveness to parental advice and guidance. Clearly here, the trial court failed to consider “all relevant factors” as required by Bayliss, supra, and its progeny. There is insufficient evidence to determine if an award for post-minority support for educational purposes is proper in this case. Additionally, the trial court has the discretion to allow the father credit for the periods of time when the son was not enrolled in college and was self-supporting. Hamilton v. Phillips, 494 So.2d 659 (Ala.Civ.App.1986).
The father next contends that the trial court abused its discretion in finding him in contempt of court for failing to comply with the 1988 modification for two months. It is his position that his failure to pay his son for two months was not an intentional violation of a court order, but rather was due to the father's misunderstanding. Additionally, he argues that as soon as it was presented to him that he was in violation of the 1988 modification, he caught up on the payments.
When the husband failed to make payments to the son for the months of March and April 1989 under the 1988 modification order, the mother filed her petition alleging contempt in May 1989. It is undisputed that the father made the payments before the hearing. The trial court found the father to be in contempt at the time the petition for contempt was filed by the mother, but did not order any punishment.
The father argues that the 1988 modification, which imposed on the father payments of $400 monthly support directly to the adult child, changed the nature of the payment from child support to a debt to a non-party, similar to the facts set out in Kaleta v. Kaleta, 452 So.2d 1388 (Ala.Civ.App.1984). Therefore, he contends that the mother cannot utilize the contempt powers of the trial court to enforce payment of a debt owed to another.
The instant case factually differs from Kaleta, supra, in that this case involves a modification in the terms of the payment of the child support obligation. The father offers nothing to show that the child support obligation changes to a debt ex con-tractu as in Kaleta, supra. The divorce and subsequent modification clearly set out that this obligation is child support that is due the mother. From the record, it appears that the parties agreed to allow the money that the mother was entitled to receive from the father for support and maintenance of the son, to be paid directly to the son. Apparently, the parties agreed, at that time, this arrangement would terminate the need for the parents to have contact with each other, perhaps foster a stronger relationship between the son and the father, and allow opportunity for the son to manage his own finances, thereby learning some independence. There is nothing to indicate that the parties intended for the obligation to become in the nature of a debt to the son.
Our review of a finding of contempt, which is via petition for certiorari, is *1177 extremely limited and we are bound to affirm the trial court if there is any legal evidence to support its finding. Roe v. Roe, 487 So.2d 1372 (Ala.Civ.App.1986). The undisputed evidence is that at the time the mother filed the petition, the father had failed to make two months’ payments. There is no question regarding the father’s ability to make the payments. The trial court had sufficient evidence before it to support a finding of contempt, and such finding was within the sound discretion of the trial court.
Finally, the father contends that the trial court erred in ordering him to pay an amount for attorney’s fees for the mother. He argues, among other things, that the mother has the ability to pay her own attorneys and that that fact should be considered in such an award.
We note that the matter of an award for an attorney’s fee in cases such as this is a matter that rests soundly within the discretion of the trial court, which will not be reversed absent abuse of that discretion. Snead v. Snead, 526 So.2d 586 (Ala.Civ.App.1988). There is evidence in the record regarding the reasonableness of the amount of the award that the father did not dispute. We cannot say that the trial court abused its discretion.
Based on the foregoing examination of the record before us, we cannot determine with any certainty whether this post-minority support was ordered under the dependent exception in Brewington, supra, or for educational purposes under Bayliss, supra. Accordingly, we reverse the judgment insofar as it fails to establish that the nature or purpose of the support for this adult child is proper. We remand the cause for the purpose of taking such additional evidence as may be necessary to reach such a determination and to render a judgment thereon. The issues regarding the mother’s attorney’s fee and the finding of contempt are affirmed.
The mother's request for an amount for attorney’s fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., concurs in the result only.
RUSSELL, J., dissents in part, concurs specially in part, and concurs in part.