On Application for Rehearing

THOMAS, Judge.
The opinion of August 6, 2010, is withdrawn, and the following is substituted therefor.
David A. Dunigan (“the father”) and Tamara H. Bruning f/k/a Tamara H. Dunigan (“the mother”) were divorced in January 1992. Pursuant to the 1992 divorce judgment, the mother was awarded custody of the parties’ two children, a daughter and a son. In March 2003, the parties agreed to a modification of the 1992 divorce judgment, and the trial court entered a judgment adopting the parties’ modification agreement. The parties’ agreement modified the visitation provisions of the 1992 judgment, in part because of the distance between the father’s residence in Alabama and the mother’s residence in North Carolina.
The modification agreement provided that the father would have visitation with the son for one week during the Christmas holidays and for the month of July. An additional week of visitation was anticipated, with a preference for the week of Spring Break, but the exact dates of that visitation week were to be arranged by agreement of the parties. Pursuant to the modification agreement, the father’s visitation with the daughter was to be arranged in cooperation with the daughter, taking into account her wishes.
In addition, the modification agreement required both parents to equally share the responsibility for the children’s postminority educational expenses. The agreement set the following requirements for parental responsibility for postminority educational expenses: that the child be a full-time student, that the child maintain a “C” average, that the child be under 23 years of age, that the postminority educational expenses not exceed the cost to attend a state-sponsored university in Alabama, and that the obligation extended only to an undergraduate degree.
Before the parties agreed to the modification of the 1992 divorce judgment, the *648 relationship between the father and the daughter had begun to deteriorate. In November 2002, the daughter, who was 14 years old at that time, informed the father that she did not wish to visit him over the Christmas holidays because she had been “extremely bored” during her three-week visit the previous summer. She explained in her electronic-mail correspondence that she did not want to spend her Christmas holiday “being bored” and that she had other opportunities that were more “physically and/or academically challenging” that she would rather avail herself of instead of visiting with the father. The daughter further referred to visitation laws that she had researched on the Internet, which, according to the information contained in the correspondence, indicated that visitation in Alabama was, depending on the child’s age, often awarded in accordance with the child’s wishes. The daughter closed her correspondence with a request that the topic be discussed only via electronic-mail correspondence.
The daughter did not visit the father during the 2002 Christmas holidays or during the next two visitation periods. In December 2003, the father inquired, via electronic-mail correspondence, whether the daughter would be attending future visits with the father. The daughter responded that “I have decided not to attend any future trips.”
The record indicates that the father and the daughter did not communicate further, other than brief pleasantries, if that, during visitation exchanges when the daughter accompanied the mother when the son came to visit the father. The father said that the daughter answered the telephone at times when he telephoned to speak to the son or to make visitation arrangements with the son and that she did not engage in any sort of conversation with him. Before the daughter started college, which was in August 2006, she telephoned the father on his cellular telephone and, according to him, asked whether he “had her money for college.” The father said that he told the daughter it would be better for him to discuss that matter with the mother and that the daughter then hung up the telephone.
In July 2006, the father filed a petition to modify the 2008 modification judgment, alleging that the daughter’s renouncement of the father’s rights to visitation resulted in a material change of circumstances warranting a modification of the 2003 modification judgment insofar as it required the father to be responsible for one-half of the daughter’s postminority educational expenses. The father further sought a modification of his child-support obligation for the son because the daughter had reached the age of majority and was no longer entitled to child support. The mother answered and brought a counterclaim seeking to enforce the father’s obligations to pay his portion of the expenses incurred for the son’s orthodontic treatment and to pay his one-half of the daughter’s college expenses.[1] At trial, the parties stipulated to the amount of child support the father would pay for the son and to certain credits the father would receive against his obligation to pay postminority educational support, if that obligation were not terminated. After the trial, the trial court entered a judgment modifying the amount of the father’s child-support obligation per the parties’ stipulation, denying the fa *649 ther’s petition to terminate the father’s duty to pay postminority educational support, calculating the father’s postminority-educational-support arrearage, applying certain credits against the postminority-educational-support arrearage, and awarding the mother an attorney fee in the amount of $2,000.
The father filed a postjudgment motion, after which the trial court amended its judgment to include conditions on the duty of the parents to pay postminority educational support. The amended judgment indicated that it was not intended to replace the provisions regarding postminority educational support contained in the 1992 divorce judgment but, rather, that it was adding conditions to that judgment. The trial court did not refer to the 2003 modification judgment, in which the parties had specifically addressed the conditions applicable to the parties’ postminority-educational-support obligations. The amended judgment reads, in pertinent part:
“1. Pursuant to the provisions of Paragraph 13 of the original Decree of Divorce entered by the Court on February 13, 1992, the Court finds that the [father] is required to continue to be responsible for one-half (½) of the necessary college expenses for [the daughter] as further set out in Paragraph 13 of the Decree of Divorce, but, in addition, this obligation for both the [parents] to pay one-half of the necessary college expenses is conditioned upon the following:
“a. That the [daughter] is required to maintain at least a ‘C’ average;
“b. That she be a full-time student at the college or university that she attends; and
“c. That the obligation of both the [parents] to pay college expenses for [the daughter] will expire or end upon [the daughter’s] reaching the age of twenty-three (23) years except for unforeseen mitigating circumstances.
“d. That the obligation of either parent to pay college expenses for the benefit of [the daughter] is conditioned upon [the daughter’s] providing full and complete information on a timely basis to each parent as to the creation of an obligation on her part or the incurring of a necessary college expense, such as, tuition, room, board, books and fees. This would also require [the daughter] to furnish information to each of the parents as to prospective courses and expenses to be incurred in advance of actually incurring same to the fullest extent possible. Both the [parents] will be responsible for paying the appropriate entity or institution requiring reimbursement or they will be required to reimburse or pay [the daughter] in advance or afterwards, as the case may be, for the payment of any such expense for which she has given notice or which she has paid herself.”
The first three conditions are restatements of the conditions contained in the modification judgment, with the exception of the phrase “except for unforseen mitigating circumstances,” which could possibly extend the father’s obligation to pay postmi-nority educational support beyond the daughter’s 23d birthday. The amended judgment added the requirement that the daughter provide full and complete information to her parents regarding tuition, room and board, and fees and to keep her parents apprised of prospective courses and other expenses to be incurred. The father did not file a postjudgment motion directed to the amended judgment, and he timely appealed.
On appeal, the father raises six arguments. The father’s chief argument is that the trial court erred in not terminat *650 ing his obligation to pay postminority educational support for the daughter because, he contends, her “repudiation” of her relationship with him should have resulted in a determination that she was no longer entitled to receive such support. The father also argues that the trial court improperly excluded any evidence regarding the undue hardship the father claimed the post-minority-educational-support obligation placed upon him. The father further argues that the trial court erred in failing to award him two credits against his postmi-nority-educational-support obligation: one for $7,018, which represented one semester of tuition, books, and fees incurred by the daughter while attending the university as a part-time student and another for tax credits received by the mother. Regarding the trial court’s imposition of conditions on the postminority-educational-support obligation in the amended judgment, the father argues that the trial court erred by modifying the 2003 modification judgment in favor of the daughter without a request to do so. The father also asserts that the trial court erred in awarding the mother a money judgment for the repayment of college expenses incurred by the daughter. Finally, the father argues that the trial court erred in awarding the mother an attorney fee.
Because the trial court entered its judgment in this case after considering evidence presented ore tenus, we presume any factual findings based on that evidence to be correct, unless those findings are so unsupported by the evidence as to be plainly and palpably wrong. Simpkins v. Simpkins, 595 So.2d 493, 495 (Ala.Civ.App.1991). Furthermore, as in all cases in which a trial court fails to make specific findings of fact, we “ ‘will assume that the trial judge made those findings necessary to support the judgment.’” Fielding v. Fielding, 24 So.3d 468, 472 (Ala.Civ.App. 2009) (quoting Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992)).
Notably, this court has held that
“the principles of Ex parte Bayliss, 550 So.2d 986 (Ala.1989), do not generally apply in the context of a parent’s contractual undertaking to provide postmi-nority support to minor children that is incorporated into a binding judgment. As we ‘specifically point[ed] out’ in Simpkins v. Simpkins, 595 So.2d 493, 495 (Ala.Civ.App.1991), which involved a petition to modify a contractual undertaking similar to that entered into by the parties in this case in 2001, ‘this is not a Bayliss fact situation or proceeding.’ Rather, the trial court’s consideration of a petition to modify such an undertaking is governed by the principle that ‘an agreement between the parties fixing child support payments, when incorporated into a judgment, becomes merged into the judgment and thereby loses its contractual nature to the extent that a court of equity has the power to modify the decree when changed circumstances so justify.’ Ralls v. Ralls, 383 So.2d 857, 859 (Ala.Civ.App.1980) [overruled on other grounds by Ex parte Bayliss, 550 So.2d at 994]; see also Wesley v. Wesley, 627 So.2d 441, 444 (Ala.Civ.App.1993) (‘[A]wards of post-secondary child support may be modified, just as other awards of child support are modified.’).”
Thomas v. Campbell, 960 So.2d 694, 697 (Ala.Civ.App.2006) (footnote omitted).
The father first argues that his daughter’s repudiation of her relationship with him, especially after she reached the age of majority, should be considered a basis for termination of his obligation to pay postminority educational support for her benefit. The father relies on cases from other jurisdictions to support his ar *651 gument that the daughter’s repudiation is a basis upon which the trial court could have terminated his postminority-edu-eational-support obligation. See McKay v. McKay, 644 N.E.2d 164, 168 (Ind.Ct.App.1994) (“The expectation that a parent would ordinarily be inclined to contribute toward his child’s college education (which may be enforced under our laws of dissolution) does not continue, and should not be enforced where an adult child has repudiated his relationship with his parent.”); Reifv. Reif, 426 Pa.Super. 14, 24, 626 A.2d 169, 174-75 (1998) (“Estrangement can operate to relieve or lessen a parent’s duty to pay support toward a college education when that parent has made a good-faith and concerted effort to establish and develop a relationship with his or her child, and the child has unquestionably and willfully rejected the parent’s outstretched hand,” even in certain cases involving a contractual obligation as opposed to a judicially imposed one); Milne v. Milne, 383 Pa.Super. 177, 556 A.2d 854 (1989), abrogated in part by Blue v. Blue, 532 Pa. 521, 616 A.2d 628 (1992) (expanding the inquiry in postminority-edueational-support cases to include consideration of the relationship between the parent and the child and creating the “estrangement defense”); Cohen v. Schnepf 115 Misc.2d 879, 881, 454 N.Y.S.2d 785, 787 (N.Y.Sup.Ct.1982) (“By admittedly rejecting visitation with his father and by cavalier rejection of paternal identity without consultation with or explanation to petitioner, this 18-year-old ‘adult’ ... has voluntarily asserted his independence from petitioner and has thus forfeited his right to claim support from him.”); and Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980) (stating that the right to postminority educational support “is dependent, not only on the child’s aptitude and qualifications for college, but on whether the child’s behavior toward, and relationship with the father, makes the child worthy of the additional effort and financial burden that will be placed on him”).
Since the inception of judicially imposed postminority educational support, Alabama law has allowed a trial court to consider the relationship between the child and his or her parents and the child’s “responsiveness to parental advice and guidance” when determining whether and to what extent to impose upon a parent the obligation of paying postminority educational support. Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989). However, this court, the court charged most often with the review of appeals involving postminority educational support, “has repeatedly stated that the existence of a strained relationship between parent and child does not prevent the child from having the opportunity to obtain a college education.” Stinson v. Stinson, 729 So.2d 864, 869 (Ala.Civ.App.1998). In the earliest of postmi-nority-educational-support cases, we held that the lack of familial interaction between a father and his daughter “should not preclude the daughter, in this instance, from having the opportunity to obtain a college education.” Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). In no instance has this court reversed a trial court’s imposition of postmi-nority educational support solely because the evidence at trial reflected that the relationship between parent and child was so broken as to be a complete impediment to the receipt of such support. But see Penney v. Penney, 785 So.2d 376, 381 (Ala.Civ.App.2000) (reversing a judgment denying postminority educational support on, among other grounds, the trial court’s determination that it rmist consider the relationship between the child and her parents when considering the imposition of postmi-nority educational support). We have affirmed a trial court’s denial of postminori *652 ty educational support using as partial support for that denial the daughter’s decision to live with her stepfather after the death of the mother and her decision to have little contact with her father and his new family despite the father’s attempts to establish a relationship with the daughter. See Newman v. Newman, 667 So.2d 1362, 1368-69 (Ala.Civ.App.1994). However, our opinion in Newman made clear that, although the trial court could have considered the poor relationship between the father and the daughter, evidence of that poor relationship “alone ... is insufficient to prevent [a child] from receiving assistance in going to college.” Newman, 667 So.2d at 1368; see also West v. West, 875 So.2d 323, 325 (Ala.Civ.App.2003) (affirming the denial of postminority educational support when the evidence failed to indicate whether the child had the “commitment to and aptitude for college” but admonishing the trial court for denying postminority educational support solely on the basis of the poor relationship between the parent and the child).
In the present case, the trial court indicated both at trial and at the hearing on the father’s postjudgment motion that it had determined that the relationship between the father and the daughter was strained even before the father agreed to be obligated to pay for her college education in the agreement merged into the 2003 modification judgment. The trial court must have then concluded that the lack of a relationship between the two could not have been a material change in circumstances warranting the modification or termination of the father’s voluntarily assumed obligation to pay postminority educational support. Based on our standard of review and the fact that the father was required to prove changed circumstances justifying a modification of his postminority-educational-support obligation, see Thomas, 960 So.2d at 697, we cannot disagree with the trial court’s conclusion that the father was not entitled to have his postminority-educational-support obligation terminated merely because the daughter is estranged from him.
The father next argues that the trial court erred by excluding evidence concerning his ability to pay postminority educational support for the daughter. At trial, the father sought to establish that requiring him to pay postminority educational support would pose an undue hardship. See Thrasher, 574 So.2d at 841 (setting out the requirement that postmi-nority educational support not cause undue hardship to the parent). The mother’s counsel objected to questions regarding the father’s income and expenses, stating that the only basis for modification asserted in the father’s petition was that the daughter was estranged from him. The trial court agreed with mother’s counsel’s view of the petition and prohibited the father from presenting evidence to establish undue hardship.
On appeal, the father argues that the issue of his ability to pay was raised by the mother’s counterclaim, in which she argued that the father had failed to pay $6,095 in college expenses incurred by the daughter in contravention of the 2003 modification judgment. The father appears to argue that the mother’s attempt to enforce his postminority-educational-support obligation somehow entitled him to prove that he was unable to pay such support without experiencing undue hardship. However, because the mother’s counterclaim simply sought enforcement of the obligation and not a finding of contempt, to which an inability to pay would have been a defense, we cannot agree that the mother’s counterclaim raised the issue of the father’s ability to pay such that the father was entitled to *653 present evidence to establish undue hardship.
The father further argues that, under Ex parte Bayliss and its progeny, the primary consideration for a trial court considering the imposition of postminority educational support is the financial resources of the parents and the child and that, therefore, his petition to modify necessarily raised the issue of his ability to pay. Ex parte Bayliss, 550 So.2d at 987. However, because the father entered into a voluntary agreement to pay postminority educational support, the principles of Ex parte Bayliss regarding the imposition of post-minority educational support are not applicable to the modification of the father’s obhgation. Thomas, 960 So.2d at 697. Instead, as explained above, the father was required to establish a change of circumstances warranting a modification of his obhgation. The only basis for modification asserted in the petition was the repudiation of the father by the daughter. Thus, we cannot conclude that the issue of the father’s ability to pay without undue hardship was at issue in the proceedings. See Guthery v. Persall, 26 So.3d 1250, 1254 (Ala.Civ.App.2009) (determining that a complaint that included an allegation of fraud was hmited to the fraud-in-the-inducement claim alleged in the complaint and could not be read to include a forgery claim).
Next, the father argues that the trial court erred in faihng to award him certain credits against his obligation to pay postminority educational support. First, the father argues that he was entitled to a credit for $7,018 in college expenses incurred by the daughter for one semester during which the daughter was only a part-time and not a full-time student. Although the evidence established that the daughter had dropped a biology course during her first semester in college, thus making her a part-time student that semester, the father testified on direct examination that he would not have refused to pay the daughter’s college expenses on that basis because, he said, “I understand the first year of college is tough, so a lot of people have a hard time.” The mother also testified that the daughter had had one “bad” semester that, the mother said, the father should not have to be responsible for under the agreement. Later, the mother’s attorney asked the mother if the “bad” semester about which she had testified was the same semester the father had testified about during his testimony; the mother answered that she did not remember. Documentary evidence indicated that the “bad” semester about which the mother testified might have occurred during the daughter’s sophomore year; the daughter admitted that she had failed some classes that semester but had maintained a “C” average. Because the evidence regarding the “bad” semester was so vague and unclear, we cannot hold the trial court in error for determining, as it must have, that the semester that the parents referred to was the same semester — i.e., the daughter’s first semester in college — which the father had testified he would pay for under the agreement despite the daughter’s failure to meet the requirements of the agreement. See Houser v. Gipson, 485 So.2d 738, 739 (Ala.Civ.App.1986) (noting that, when the testimony is vague and conflicting, the resolution of any conflicts in the evidence is the task of the trial court).
The father also argues that he was entitled to a credit equal to half of the tax credits the mother claimed on her tax returns. The information regarding these credits is sparse, although the mother did testify that she received the tax credits. The father, in contravention of Rule 28(a)(10), Ala. R.App. P., cites no legal *654 authority for the proposition that he is entitled to half of the income-tax credits claimed by the mother. Thus, we will not entertain this argument further. Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (stating that “[t]his court will address only those issues properly presented and for which supporting authority has been cited”).
The father next challenges the trial court’s amended judgment insofar as it modified the 2003 modification judgment to remove certain restrictions imposed by that judgment on the obligation to pay postminority educational support. The father fails to make any legal argument in support of reversal on this issue and, again in contravention of Rule 28(a)(10), cites no relevant authority. We therefore decline to consider this issue as well. Asam, 686 So.2d at 1224.
The father next argues that the trial court erred in awarding a money judgment to the mother for the repayment of college expenses incurred by the daughter. He contends that the evidence did not establish that the mother had expended any sum of money to pay for the father’s half of the daughter’s college expenses. In fact, he points out that the daughter’s $20,000 in student loans paid for over half of the college expenses incurred by the daughter. Because the father was required to pay for only half of the daughter’s college expenses, the evidence did not establish that the mother was due any money from the father. Thus, we agree that the trial court improperly awarded the mother a money judgment, and, insofar as it did so, its judgment is reversed. See Wilkinson v. Wilkinson, 42 So.3d 1271, 1280 (Ala.Civ.App.2010) (affirming a trial court’s judgment failing to determine an amount owed to the mother by the father when the mother failed to establish, among other things, that she had repaid any of the older child’s student loans or that she was personally liable for repayment of those loans and, thus, had failed to establish that she contributed funds toward the child’s postminority educational expenses).
Finally, the father argues that the trial court abused its discretion in awarding the mother a $2,000 attorney fee. “We note that the matter of an award for an attorney’s fee in cases such as this is a matter that rests soundly within the discretion of the trial court, which will not be reversed absent abuse of that discretion.” Layfield v. Roberts, 599 So.2d 1169, 1177 (Ala.Civ.App.1991) (citing Snead v. Snead, 526 So.2d 586 (Ala.Civ.App.1988)). “Factors to be considered by the trial court in a modification case in making an award of attorney fees include the earning capacity of the parties, the results of the litigation, and the financial circumstances of the parties.” Amie v. Conrey, 801 So.2d 841, 847 (Ala.Civ.App.2001). The father argues that the mother earns almost twice as much as he does and that the parties would have had to seek modification of the father’s child-support obligation for the son because of the daughter’s attaining the age of majority; thus, he contends, the award of an attorney fee to the mother is, in this case, an abuse of discretion. We disagree.
Although the parties would have been required to institute a modification action to modify the father’s child-support obligation respecting the son, it is clear that the parties easily reached an agreement on the amount of child support due for the son under the child-support guidelines. Thus, although the mother could possibly have incurred some small amount for an attorney fee for the modification of the father’s child-support obligation, the issue litigated in the present case was the father’s attempt to avoid his obligation to *655 pay postminority educational support to the daughter, which he based on legal authority from other states that, although certainly interesting, was inapplicable to the father’s voluntary agreement to pay postminority educational support and was also contrary to Alabama law on the issue. The father was unsuccessful in his endeav- or to avoid his postminority-educational-support obligation, although he did succeed in being awarded certain credits, one of which the mother had stipulated he was due to receive. Thus, despite the disparity of the parties’ incomes, which does support the father’s argument against the award of an attorney fee, the remaining factors support the trial court’s conclusion that the mother was due an award of an attorney fee. Thus, the trial court’s award of an attorney fee to the mother is affirmed.
In conclusion, the trial court’s judgment is reversed insofar as it awarded a money judgment in favor of the mother because the evidence at trial did not establish that the mother had paid or was liable for any of the father’s portion of the postminority educational expenses incurred by the daughter. In all other respects, the trial court’s judgment is affirmed.
APPLICATION OVERRULED; OPINION OF AUGUST 6, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMPSON, P. J., concurs in the result, without writing.

. The mother's original counterclaim requested that the father be held in contempt for failing to pay his obligations under the 2003 modification judgment; however, the clerk’s office returned the mother's counterclaim with a request that the mother pay the "contempt fee.” The mother then filed an amended counterclaim that did not include a request that the father be held in contempt.